UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CURTIS W. JOHNSON,

        Plaintiff,

        v.                                   Case No. 20-C-187

KEVIN A. CARR, CATHY A. JESS,
SCOTT M. ECKSTEIN, LORI ADAMS,
JAY VANLANEN, TODD HAMILTON,
CPT. JAMES ELLSINGER,
LT. REBECCA LENZ, SGT. COOK,
JOSHUA J. GOMM, COLIN FRUEHBRODT,
JAMIE ADKINS, ZAKARY KORPITA, and
NURSE JANE DOE #1,

        Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Curtis W. Johnson, who is serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on Defendants' motion for summary judgment on exhaustion grounds. Though Johnson filed his own motion for summary judgment on the merits, he did not respond to Defendants' argument that this case must be dismissed without prejudice based on Johnson's failure to exhaust available administrative remedies before filing this lawsuit. Before proceeding to the merits, the district court must determine whether administrative remedies have been exhausted. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). As a result, the court will consider whether Johnson exhausted his administrative remedies as required by the Prison Litigation Reform Act (PLRA) before turning

to the merits of this action. For the reasons that follow, the court finds that Johnson has failed to exhaust his administrative remedies. Therefore, Defendants' motion for summary judgment will be granted and the case will be dismissed without prejudice.

## BACKGROUND[1]

Johnson has been permitted to proceed on Eighth Amendment claims alleging that (1) Defendants Gomm, Fruehbrodt, Adkins, Korpita, and Ellsinger deprived him of food in late April and early May 2018 as punishment for smearing feces on his cell wall; (2) Defendants Gomm and Fruehbrodt forced him to scrape the feces off the wall with his hands before giving him food; (3) in late May 2018, Defendant Gomm told another inmate that he would deny Johnson food, which caused Johnson to stab himself in the arm with a piece of metal when the other inmate told him; (4) Defendants Cook, Lenz, Ellsinger, and an unidentified nurse delayed medical treatment for his wound; (5) Defendants Jess, Eckstein, Adams, Van Lanen, and Hamilton ignored the risk of harm from restricted-housing conditions and mistreatment by staff; and (6) Defendant Carr is liable for these ongoing conditions. He has also been permitted to proceed on Fourteenth Amendment equal protection claims against Defendants Gomm, Fruehbrodt, and Van Lanen based on their alleged harassment of him because of his mental illness.

Johnson filed four inmate complaints potentially related to this case. In GBCI-2018-15962, Johnson complained that in July 2018, staff did not stop him from harming himself. This inmate complaint was rejected because Johnson failed to cooperate with the investigation of the complaint. Dkt. No. 44-2 at 2. Johnson did not appeal the rejection of the complaint. In GBCI-

---

[1] Because Johnson failed to respond to Defendants' proposed findings of fact in accordance with Civil L.R. 56, those facts are deemed admitted for the purposes of summary judgment. *See* Civil L.R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

2018-16127, Johnson complained that he did not receive proper medical attention from July 21 through July 23, 2018. The complaint was dismissed on the merits, and Johnson did not file an appeal. Dkt. No. 44-3. In GBCI-2018-16128, Johnson complained that, on July 23, 2018, he was not sent off-site for his injuries. The complaint was dismissed on the merits, and the appeal was rejected for failing to meet the requirements of Wis. Admin. Code § DOC 310.09(2)(e), which requires that appeals not exceed 500 words total and not exceed two pages. Dkt. No. 44-4. In GBCI-2019-13351, Johnson complained of a delay in medical care on July 25, 2018. The complaint was dismissed on the merits, and Johnson never filed an appeal. Dkt. No. 44-5. Johnson did not file any other inmate complaints potentially related to his claims.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that the is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

**APPOINTMENT OF COUNSEL**

Before addressing the motion for summary judgment, the court will address Johnson's renewed motion for appointment of counsel. Johnson filed his first motion to recruit counsel on February 19, 2020. The court denied the motion on February 21, 2020, finding that Johnson had not made a reasonable attempt to recruit counsel on his own, that he failed to provide specific evidence to support a finding that he lacks the competency to represent himself, and that the case does not exceed Johnson's capacity to represent himself. In Johnson's renewed motion to recruit counsel, filed on March 13, 2020, Johnson states that he is physically and intellectually disabled and that recruiting counsel in this case would serve the interests of justice due to "GBCI's outrageous abuses of seriously mentally ill" inmates. Dkt. No. 62 at 1.

Civil litigants do not have a constitutional or statutory right to have an attorney represent them. *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) ("We begin with the fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court."). Even though civil litigants do not have a constitutional or statutory right to appointed counsel, district courts have the discretion to recruit attorneys to represent indigent litigants in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). As a threshold matter, civil litigants must make a reasonable attempt to secure private counsel on their own. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). Once this threshold burden has been met, the court must address the following question: "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Id.* at 654–55 (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th Cir. 1993)).

Again, Johnson has not demonstrated that he made reasonable efforts to secure private counsel on his own, and his motion could be denied on this basis alone. But even if Johnson had

made a reasonable attempt to recruit counsel on his own, he has failed to demonstrate a need for court-recruited counsel. The legal standard for deciding motions to recruit counsel under § 1915(e)(1) in the Seventh Circuit requires the district court to recruit counsel if "the difficulty of the case—both factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655. The court must consider "both the difficulty of the case and the pro se plaintiff's competence to litigate it himself." *Id.* at 649.

In assessing whether a pro se plaintiff is competent to litigate his own case, *Pruitt* observed that there are "no fixed requirements." *Id.* at 655. A district court may consider "the plaintiff's literacy, communication skills, educational level, and litigation experience." *Id.* Information regarding "the plaintiff's intellectual capacity and psychological history" is also relevant. *Id.* Although Johnson claims he has a mental illness, he has revealed an ability to litigate on his own behalf. His filings are neat, and he has been able to coherently present his claims and arguments in this case. While Johnson may benefit from having an attorney, that is not the test. Instead, the question is whether the plaintiff would be unable to coherently present the case to a judge or jury. Johnson has not established that any physical or mental limitations interfere with his ability to litigate this case. In short, there is nothing in the record to suggest that Johnson does not have the same competence to represent himself as the vast number of other pro se litigants who cannot afford to hire an attorney and are unable to convince one to take his case on a contingent fee basis.

In addition, this case is not complex. Johnson is proceeding on claims that GBCI staff denied him food for several days, humiliated him by forcing him to scrape feces off his wall with his bare hands, goaded him into committing self-harm, and failed to promptly get him medical assistance after he harmed himself. Aside from the merits of the case, the issue raised in Defendants' motion for summary judgment—Johnson's failure to exhaust his administrative

5

remedies—does not present complex factual or legal issues. Exhaustion is a threshold issue that

is not unique to Johnson's case. Therefore, the difficulty of the case does not exceed Johnson's

capacity to represent himself.

Finally, the fact that a plaintiff is currently serving a sentence for a crime ordinarily does

not entitle him to court-recruited counsel that a similarly situated person who is not incarcerated

would lack. It is important to note that pro bono resources are scarce in comparison to the number

of cases brought by prisoners. In this district, there were 523 pro se prisoner lawsuits filed in

2019. According to the Pro Se Staff Attorneys, the court was able to recruit only 33 attorneys to

handle prisoner cases pro bono during that same period of time. The Seventh Circuit recently

addressed the scarcity of pro bono resources in affirming a district court's decision to not recruit

counsel:

> [I]n light of the scarcity of volunteer lawyers, the district court was entitled to view
> the needs of pro se litigants in the district as a whole and to exercise its discretion
> to determine which cases warranted the outlay of judicial resources in attempting
> to recruit counsel. . . . As the district court recognized here, almost any pro se
> litigant would be better off with a lawyer, but that reality is not sufficient to require
> the court to try to recruit one. In this case, the district court was entitled to conclude
> that, given the simplicity of Williams's case "among a sea of people lacking
> counsel," . . . it need not recruit counsel for Williams.

*Williams v. Reyes*, No. 19-1778, 2020 WL 435372, at *3 (7th Cir. Jan. 28, 2020). In short, a

district court must decide in each case whether a particular plaintiff should be the beneficiary of

the judicial resources required in attempting to recruit counsel and the limited resources of lawyers

who volunteer to take cases pro bono. *See McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir.

2018) (Hamilton, J., concurring) ("[A] district judge who faces a case like McCaa's must decide

whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others,

should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests

under 28 U.S.C. § 1915(e)(1). In allocating those limited resources, a district judge should be

able to make an educated and experienced assessment of how promising the plaintiff's case is, with or without counsel."). In light of Johnson's abilities and the relatively straightforward nature of motions for summary judgment based on a plaintiff's failure to exhaust his administrative remedies, the court concludes that this case does not warrant court-recruited counsel. For these reasons, the court denies Johnson's motion to recruit counsel. The court therefore turns to the merits of Defendants' motion for summary judgment.

## ANALYSIS

Defendants assert that this case should be dismissed because Johnson failed to exhaust his administrative remedies. The PLRA provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A plaintiff's failure to properly exhaust each step of the process constitutes a failure to exhaust available administrative remedies. *Id.* The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 526, 532 (2002). The purpose of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are

"expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Under the ICRS, an inmate must file a complaint with the institutional complaint examiner (ICE) within 14 calendar days after the events giving rise to the complaint occur, unless good cause exists to excuse a delay. *Id.* § DOC 310.07(2). The ICE has the authority to return, investigate, or reject the complaint. *Id.* § DOC 310.10. The inmate may appeal the rejection of the complaint to the appropriate reviewing authority within 10 calendar days. *Id.* § DOC 310.10(10). The reviewing authority shall make a decision within 15 days following receipt of the recommendation or appeal of a rejected complaint. *Id.* § DOC 310.11(1). The reviewing authority's decision is final. An inmate may appeal the reviewing authority's decision within 14 days after the date of the decision by filing a typed or legibly printed request for review with the correction complaint examiner (CCE). *Id.* § DOC 310.12(1). After reviewing an appeal, the CCE recommends a decision to the Department of Corrections (DOC) Secretary, who adopts or rejects the recommendation. *Id.* §§ DOC 310.12; DOC 310.13. The failure to properly exhaust each step of the grievance process before filing a lawsuit constitutes a failure to exhaust administrative remedies. *Pozo*, 286 F.3d at 1025.

Defendants maintain that Johnson failed to exhaust his available administrative remedies because he did not pursue each step within the administrative process before filing his lawsuit. Although Johnson filed institutional complaints that may be related to his claims, once the complaints were denied or rejected, Johnson either completely failed to file an appeal or failed to file an appeal that complied with the procedural requirements set forth in the Administrative Code. *See Woodford*, 548 U.S. at 91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). In short,

the court finds that Johnson did not complete the grievance process as required by § 1997e(a). When the failure to exhaust is the prisoner's fault, his claim must be dismissed. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Accordingly, the court will grant Defendants' motion for summary judgment.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 41) is **GRANTED**. Johnson's motion to appoint counsel (Dkt. No. 62) is **DENIED**. Johnson's motion for summary judgment (Dkt. No. 58), motions for an order for videos and pictures (Dkt. Nos. 50, 57), and motion for an extension of time to obtain videos and pictures (Dkt. No. 65) are **DENIED as moot**. This case is dismissed without prejudice based on Johnson's failure to exhaust his administrative remedies. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of March, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court